[No. 5523-0-III.   Division Three.   June 14, 1984.]

WILLIAM M. DICKINSON, *Appellant,* v. ERSEL C. EDWARDS, ET AL, *Defendants,* KAISER ALUMINUM & CHEMICAL CORPORATION, ET AL, *Respondents.*

---

*James M. Kalamon* and *Paine, Hamblen, Coffin & Brooke,* for appellant.

*Meriwether D. Williams, Winston & Cashatt, Gail Holden,* and *Turner, Stoeve, Gagliardi & Goss,* for respondents.

McINTURFF, J.—William M. Dickinson appeals from a summary judgment dismissing his personal injury complaint against Kaiser Aluminum & Chemical Corporation (Kaiser) and Spokane Red Lion Motor Inn (Red Lion).

Kaiser sponsors an annual awards banquet to honor employees who have been with the company for 25 or more years. In June 1979, Kaiser contracted with the Red Lion to hold the banquet in one of its meeting rooms. Pursuant to the contract, a champagne and cocktail hour hosted by Kaiser preceded the banquet. Included in the contract were special instructions which read: "Champagne at door and check to make sure glasses are kept refilled." The cocktail hour began at 6 p.m., followed by dinner at 7 p.m. and the presentation of awards at 8:15 p.m. The evening ended between 10 and 10:30 p.m. At each dinner table which

seated eight guests, there were open bottles of red and white wine, and drinks and champagne were available upon request during and after dinner. Red Lion employees poured and served each glass of champagne; other drinks were ordered from Red Lion waitresses. Kaiser gave no instructions to Red Lion personnel to limit the amount of alcohol served.

Ersel Edwards, a Kaiser employee of 25 years, accepted Kaiser's invitation to attend the June 22 banquet. He admitted consuming five or six hard liquor drinks prior to dinner and three or four more drinks and a small glass of champagne during dinner. Mr. Edwards left the banquet alone at approximately 10:15 p.m. and proceeded by car toward his workplace at Kaiser to begin his graveyard shift. En route, Mr. Edwards admitted "going the wrong way on a one–way ramp" which caused a head–on collision between his car and a motorcycle operated by Mr. Dickinson. The investigating officer of the Washington State Patrol said Mr. Edwards was obviously intoxicated when he arrived at the accident scene at 10:25 p.m., about 5 minutes after the accident occurred. One hour later Mr. Edwards submitted to a Breathalyzer test and registered .17 percent blood alcohol level.

On a summary judgment the court dismissed defendants Kaiser and Red Lion. The issue is whether Kaiser and Red Lion were negligent in serving alcohol to Mr. Edwards, who was observed by a state patrolman to be obviously intoxicated about 10 minutes after leaving the banquet.

Mr. Dickinson premises liability on two theories: (1) Kaiser was vicariously liable because Mr. Edwards, an employee, was en route to his job after departing a Kaiser-sponsored social function, and (2) both Kaiser and Red Lion were liable because they continued to furnish alcohol to one obviously intoxicated. On review of the dismissal by summary judgment we must accept as verities each of plaintiff's allegations, claims and offers of proof. *Halvorson v. Birchfield Boiler, Inc.,* 76 Wn.2d 759, 760–61, 458 P.2d 897 (1969).

With respect to the first theory of liability, our courts have recognized a worker is not, under ordinary circumstances, in the course of his employment while going to and from his place of employment. *Aloha Lumber Corp. v. Department of Labor & Indus.,* 77 Wn.2d 763, 766, 466 P.2d 151 (1970); *Superior Asphalt & Concrete Co. v. Department of Labor & Indus.,* 19 Wn. App. 800, 802, 578 P.2d 59 (1978); *Flavorland Indus., Inc. v. Schumacker,* 32 Wn. App. 428, 647 P.2d 1062 (1982). In *Flavorland,* the widow of an employee killed in an alcohol–related 1–car accident brought an action to recover a pension allegedly owed to her based on the argument her husband was acting within the scope of his employment. The court ruled in favor of the widow, noting her husband was driving a company car, was required to socialize with livestock buyers and sellers, and was known by the company to occasionally overindulge. Mr. Dickinson argues *Flavorland* impliedly recognized the special errand exception to the going and coming rule since it presented a fact pattern where the employee attended a social event even though he was not specifically required to do so. We decline to apply *Flavorland* because the facts here do not rise to the level of employer involvement found there. The car driven by Mr. Edwards was not owned by Kaiser, nor was he reimbursed for travel expenses. His job description did not require him to socialize on behalf of the company, he was not required to be present at the banquet, nor was any business conducted by him on behalf of Kaiser at the banquet. Finally, Mr. Dickinson presented no proof that Kaiser had knowledge of any prior alcohol–related offenses by Mr. Edwards and thus would not be able to reasonably foresee he would drink beyond his limit. We therefore hold Kaiser is not vicariously liable for the acts of Mr. Edwards.

In addition to his theory of vicarious liability, Mr. Dickinson argues Kaiser and Red Lion were negligent in furnishing liquor to Mr. Edwards. In *Halvorson v. Birchfield Boiler, Inc., supra* at 762, the court adopted the general common law rule that the furnisher of liquor is not

liable:

> [I]t is not a tort to either sell or give intoxicating liquor to ordinary able–bodied men, and it has been frequently held that, in the absence of statute, there can be no cause of action against one furnishing liquor in favor of those injured by the intoxication of the person so furnished. . . .

(Footnotes omitted.) 30 Am. Jur. *Intoxicating Liquors* § 520 (1958).

> It is generally held that there can be no cause of action against one furnishing liquor in favor of those injured by the intoxication of the person so furnished, even though the liquor was sold or given to one in violation of a law other than under a civil damage act, so long as the person to whom the liquor was sold or given was not in such a state of helplessness or debauchery as to be deprived of his will power or responsibility for his behavior.

(Footnotes omitted.) 30 Am. Jur. *Intoxicating Liquors* § 521 (1958).

The *Halvorson* exception has been expanded from one in such a state of helplessness or debauchery as to be deprived of his willpower to one "obviously intoxicated." *Wilson v. Steinbach,* 98 Wn.2d 434, 438, 656 P.2d 1030 (1982); *Young v. Caravan Corp.,* 99 Wn.2d 655, 658, 663 P.2d 834 (1983); *Halligan v. Pupo,* 37 Wn. App. 84, 87, 678 P.2d 1295 (1984). In *Halligan,* the court reversed an order of summary judgment dismissing a claim against the suppliers of alcohol because the victim of the auto collision had created a genuine factual issue as to the other driver's obvious intoxication at the Christmas party, *i.e.,* he was unsteady on his feet and was "totally obnoxious" at the time he made a presentation to the other guests. However, in *Wilson,* at 440, the court affirmed an order of summary judgment dismissing a wrongful death action against the liquor supplier, because there was no showing the decedent appeared obviously intoxicated or helpless.

In the present case, plaintiff claims Mr. Edwards was so obviously intoxicated that Kaiser and the employees of the Red Lion were negligent in continuing to serve him alco-

holic beverages. As proof of Mr. Edwards' condition, he offers the admissions made by Mr. Edwards with respect to the number of drinks he consumed and the observations and report made by the investigating state patrolman. In reviewing the depositions, we find no statement Mr. Edwards appeared to the other guests to be intoxicated at the banquet, or that his speech was slurred, or his walk unsteady. "The settled rule in this state as to actions based on the *Halvorson* line of cases is that a person's sobriety must be judged by the way she appeared to those around her, not by what a blood alcohol test may subsequently reveal." *Wilson,* at 439 (citing *Barrie v. Hosts of Am., Inc.,* 94 Wn.2d 640, 643 n.1, 618 P.2d 96 (1980); *Shelby v. Keck,* 85 Wn.2d 911, 915, 541 P.2d 365 (1975)).

Viewing the testimony in a light most favorable to Mr. Dickinson, we find there is no evidence upon which to base a material question of fact related to Mr. Edwards' conduct at the banquet that would lead a reasonable person to conclude he appeared "obviously intoxicated" to those who served him.

It is apparent from our reading of the cases cited above our court is reluctant to expand the law to hold the furnisher of intoxicants liable for injury caused by one under the influence of alcohol. It is our contention such an expansion must come from the Legislature in line with *Wilson,* at 441–42:

> Previously, we have stated that the proper body to change the law in this area is the Legislature.
> It may be that the social and economic consequences of "mixing gasoline and liquor" should lead to a rule of accountability by those who furnish intoxicants to one who becomes a tort–feasor by reason of intoxication, *but such a policy decision should be made by the legislature after full investigation, debate and examination of the relative merits of the conflicting positions.*

(Citations omitted. Italics ours.) . . . It has now been 13 years since the above words were written and they are no less true today than they were then. We continue to believe that if any change is to be made as to the civil

liability of those who furnish intoxicants to persons who cause injury or death by reason of intoxication, that change should be by legislative mandate.

(Citations omitted.) Consequently, we hold the trial court did not err in granting summary judgment in favor of defendants Kaiser and Red Lion.

The order of summary judgment entered by the Superior Court is affirmed.

GREEN, A.C.J., and THOMPSON, J., concur.

Review granted by Supreme Court September 21, 1984.